Good morning. May it please the Court, my name is Darren Rush and I represent the appellant third party defendant, Ace Property and Casualty Insurance Company in this matter. The District Court erred when it failed to stay or dismiss Highlands' third party complaint against Ace in favor of arbitration. The District Court reached this erroneous result by applying the wrong standard to the issue of arbitrability. As your honors are no doubt aware, there is a substantial body of federal case law regarding arbitrability and how to determine issues of arbitrability. There is a very strong federal policy favoring arbitration. These many cases set forth a multitude of rules enforcing that federal policy. For example, where an agreement contains an arbitration clause, there is a presumption of arbitrability. Arbitration clauses are required to be construed as broadly as possible and any doubts in favor of arbitrability must be resolved in favor of arbitration. This standard is intentionally low. Where the arbitration clause is broad, even collateral matters, meaning collateral issues and disputes, should be submitted to arbitration so long as those collateral issues and disputes, quote, touch matters, end quote, covered by the arbitration clause. The District Court here ignored the touch matters rule. As a result, the court construed the scope of the arbitration clause too narrowly. Which arbitration clause? The arbitration clause in the quota share agreement. That's the one you're relying on. We rely on both clauses, your honor, but primarily upon the arbitration clause in the quota share agreement. The District Court's error is demonstrated by its statement in its opinion that the arbitration clause in the quota share agreement is limited to disputes arising out of that agreement, out of that document. That ruling, that statement is contrary to well-established federal law regarding arbitration. Again, it ignores the touch matters test. ACE has cited a number of cases applying the touch matters test in very similar circumstances. Circumstances where there are multiple agreements between the parties. One of the parties commences an action based upon one of those agreements, one of those agreements that does not contain an arbitration clause. The other party responds with a motion to dismiss or stay in favor of arbitration, relying upon one of the agreements that does contain an arbitration clause. This is by no means a new issue. This happens again and again and again. There are multiple cases that we have cited in our briefs. There are multiple cases that we cited to the District Court. The District Court ignored that test completely in its opinion. Nowhere in that opinion will you see any discussion of these other multi-contract cases. In each of these cases the courts ruled that, again, so long as the issues, the dispute, touch matters of the contract or the arbitration clauses, then those issues must be resolved in arbitration. The courts have applied this rule to a myriad of different types of disputes. The courts have applied and required arbitration of tort claims, negligence, defamation. The courts have required arbitration of breach of contract claims, meaning breach under a contract that does not include an arbitration clause. The courts have required arbitration even of statutory claims, antitrust claims, RICO claims, finding that even though those claims may not technically arise under the agreement, they touch matters related to the agreement. One of the things the District Court cited was that the 64 agreement by definition involved matters arising as early as 1964. And the quota share agreement has a date, an effective date of January 1, 1970. So that was part of the District Court's rationale as to why they had to be two separate transactions. What's your response to that? That reasoning presumes Hyland's position in this case. It effectively puts the rabbit in the hat because it presumes that Hyland's interpretation of that Addendum 5 is in fact correct, that that does apply back to 1964. It's our position that it doesn't in fact apply back to 1964. So that's an arbitrable issue? Absolutely. That's an issue that needs to be decided by the arbitration panel, not by the court. By finding that these two provisions apply to different transactions, the court has improperly stepped upon an issue that should be resolved by the arbitration panel. Well, it's interpreted the contracts. I suppose from your point of view, the only way we could affirm the District Court is if that's the only possible interpretation of that language. Yeah, you're right. Like I said, by reaching that conclusion, that's an issue that the arbitration panel has to decide. Well, if there's nothing to decide, though, if it's clear as a matter of law what that contract applies to, then there's nothing to arbitrate. But I don't think it is clear. I mean, what we've offered up is a reasonable interpretation of that Addendum 5. I mean, if you read that Addendum 5, it doesn't say this applies back to 1964. It uses words like, in all cases. And I would submit to the court that the use of the phrase, in all cases, doesn't necessarily mean back to 1964. If when that provision was drafted, all of the parties understood in all cases means in all cases where Highland's actually issued, the policy was actually issued on behalf of Highland, where it was a direct policy. Again, the district court here made no attempt to distinguish these multiple cases involving multiple contracts, the Brayman case, the Ace Overseas case. There are multiple cases from both this circuit, other circuits, as well as district courts, not mentioned at all in the court's opinion. The issues in dispute here do, in fact, touch upon matters covered under the arbitration provision in the Quota Share Agreement, because as I just stated, it's Ace's position that Amendment 7 to the Quota Share Agreement was intended to accomplish the same thing as Addendum Number 5 to the Highland's Agreement, that they involve the same issue. And therefore, as I stated, it is Ace's principal defense to Highland's claim under this Addendum 5 that, no, that's not what it means. What it means is the same thing as Amendment 7. So, therefore, the only way to resolve that issue of what Addendum 5 means is by looking at Amendment 7. That issue must be arbitrated. If I could just briefly address another point, which is frankly a preliminary point to the argument of scope, and that is whether Highland's is, in fact, a party to the Quota Share Agreement. I frankly believe that that is an easier question. We believe that the District Court implicitly found that Highland's was, in fact, a party to the Quota Share Agreement by getting to the issue of scope. If Highland's was not a party to that agreement, then there is no discussion of the scope of that agreement. And as we pointed out, there are multiple reasons why, in fact, it is demonstrated that I would like to do is reserve my last remaining minute for rebuttal, if that's okay with the Court. May it please the Court. Brian O'Donnell from Riker Danzig, representing Highland's Insurance Company, the APOE. I'd like to begin by responding to a couple of points that Appellant's Counsel raised during argument. First, in stating that the District Court applied the wrong standard, I believe he's mistaken, courts are required to determine two things when arbitrability is an issue. One is whether or not there is an agreement between the parties that requires arbitration, and the second is whether or not dispute an issue falls within the scope of the arbitration clause. What the District Court did was determine that the dispute an issue falls within the scope of the court of share agreement, and therefore it followed the standard. What Mr. Rush refers to as the standard touch matters line of cases is really a test that I don't believe really applies to situations where you have two contracts. I think it was developed originally by the U.S. Supreme Court in the Mitsubishi case to deal with a situation where parties to a contract had agreed to a contract that contained an arbitration clause. One of the parties was unhappy with having to arbitrate its dispute under that contract, and therefore it filed court claims against the other party trying to get away or around the arbitration clause. Courts rightfully have recognized that just by styling your remedy a different way, you should not be able to escape the bounds of an arbitration clause. But, you know, that analysis, I don't believe. Well, counsel, you know, this is not the easiest case to understand with all the contracts and addenda, but the understanding I have of it is this, and please correct me if I'm wrong, but the relationship between Highlands and ACE with regard to reinsurance, that's the subject matter of that contract, correct? Correct. The quota share agreement, which comes into being at or about the same time, actually it's existed for four years by the time that addendum number five is signed, the quota share agreement is entered into in 1970, the 64 agreement is entered into in 64, addendum number five is entered into in January of 1970, and amendment number seven is entered into in February of 1970. I'm sorry. The effective date of addendum number five is in 1974, isn't it? It's signed 1974, but it's retroactive. Sure. I know it talks a lot about effective dates. We're going to have a bunch of effective date cases over the next two days, but the question here is the date that this contract is entered into when the parties come to a meeting of the minds is in 1974, which is four years after the inception of the quota share agreement. Correct. And the quota share agreement also describes the relationship between ACE, Highlands, and a number of other insurance companies with regard to this pool, correct? That's right. All right. So the contention that ACE is making here is that those two relationships dovetail in some way, that you can't separate the obligations under one from the obligations under the other. Your client obviously disagrees with that. But if the record permits reasonable inference in favor of either of those two interpretations of the contracts, isn't that sufficient given the breadth of the arbitration clause in the quota share agreement to send the matter to arbitration? No, Your Honor. I don't think it is. Why not? Well, first of all, just to clarify, I don't think ACE is relying upon the quota share agreement. It's relying upon amendment number seven, which it says is the same as addendum number five. That's an amendment to the quota share agreement. That's true. That's true. But I don't think there's any argument that the quota share agreement really relates outside of addendum number seven, really creates any obligations between anyone other than with respect to ACE's participation in the pool. It creates a reinsurance relationship between ACE and Highlands, among others, doesn't it? I think what it does, and again, our contention is that it's a form of managing general agency agreement. It's a pooling agreement. Whatever it is, it talks about how money flows from ACE to Highlands and other members of the pool. It talks about how ACE will participate in risks that the pool underwrites. Right. By providing money. That's their participation, isn't it? No. ACE, well, ACE gets money to reinsure and it accepts risk. So it's not providing money. Okay. But if the risk, well, never mind. The point is the subject matters of the two agreements with their addenda have a relationship to each other. Well, I mean, they have some relationship, but, you know, there is no way that addendum number seven could, by its very terms, apply to the business that's in dispute in our litigation. Because if it did, it operates as a pass through. So if Eagle Star was the fronting company, which it was, then Highlands wouldn't be reinsuring Eagle Star. ACE would, by virtue of addendum number seven. So Eagle Star could not pursue Highlands. It would have to pursue ACE. The reason Eagle Star is pursuing Highlands is because all this business took place prior to the time that ACE first entered into the pool through the quarter share agreement. But now you're trying to bring ACE in as a third party defendant. Under a different agreement, ACE agreed to take over excess of loss obligations that the pool had originally lined up to protect pool members, including Highlands. But you're arguing then that the quota share agreement is irrelevant to those earlier transactions. ACE is arguing otherwise. Right. So somebody needs to interpret the quota share agreement, correct, to see what it's what it what it covers. What relevance, if any, it has to this relationship. And that issue, it seems to me, falls within the arbitration clause in the quota share agreement. I would disagree. I think that I think that it's for a court to determine, you know, the scope of the arbitration, the scope of the matter in dispute and whether or not it falls under the arbitration clause. And I think here we have a situation where we're timeframe difference in parties, difference in consideration. Highlands had this excess of loss program with foreign unauthorized reinsurers in place. It was uncomfortable with it because it had default concerns. It had taken it had created a trust fund to keep premium in in the event that there was a default. By entering into Amendment No. 7, Highlands gave up that trust fund because it now had ACE as its excess of loss reinsurer. If all Highlands ever did was if all Amendment No. 7 ever did was create a pass through, it would put Highlands back in the exact same situation. But you're and it would have given up its consideration. You're essentially asking then you're saying the district court had a right to interpret the meaning of the quota share agreement as it pertains to that agreement being set up as a defense by ACE in this case. I think by necessity, the district court has to determine whether or not Highlands claims can fall within the scope of the arbitration clause. Isn't that an arbitral question? No, I think scope is an issue that a court has to decide. No, the parties agree that any dispute as the meaning of the quota share agreement, it's a very broad arbitration clause in the quota share agreement. Right. In order to assess the viability of ACE's defense to your third party claim, you have one has to interpret the quota share agreement. One has to decide what the quota share agreement means. And the parties of the quota share agreement said, if we've got a dispute as to what this agreement means, we take it to arbitration. Well, well, two points. One, we don't contend that we're a party to the quota share. That I understand. OK, but second, if that were the standard, then all the party would ever have to do is say that my contract governs your contract and my contract has an arbitration clause. So we have to arbitrate. You could have a contract for delivery of bricks and a contract for. It has to touch and concern. I mean, that's the meaning of that. It has, there has, the court has to make a threshold finding that there's some connection between the contracts. Right. And here, the court can't make that determination because it deals with different time frames, different parties, and it was entered into for different purposes. OK. Thank you, counsel. Thank you. Just two very brief points. Highland's counsel argued that the touch matters test doesn't apply to cases where the other claim is a breach of contract claim. And that's not, in fact, the case, the cases that we have cited, Brayman, Ace Capital Overseas, Simula, National American Insurance Company versus SCORE, personal security, JJ Ryan, all of which are circuit court cases, all involved another claim that was a breach of contract claim. The final point I would make is that in those cases, the other contract didn't contain an arbitration clause. Here, that's not even the case. Here, the other contract, the 1964 agreement, does, in fact, contain an arbitration clause, making the case even stronger that this is a dispute that should be subject to arbitration. Thank you. Thank you, counsel. Case just argued will be submitted.
judges: Reinhardt, Rawlinson, Fogel